IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CRIMINAL ACTION NO. 06-10019 |
| | ) | |
| ROBERT LAWRENCE, | ) | |
| Defendant. | ) | |

**MOTION FOR ATTORNEY FEES AND COSTS**

Comes now Defendant and moves the Court for an order awarding the Defendant his attorney's fees and costs, and states as follows:

Pursuant to the Hyde Amendment, a prevailing Defendant is entitled to the recovery back of attorney's fees and costs in certain circumstances. See e.g. *U.S. v. True*, 250 F.3d 410 (6th Cir. 2001). For these purposes, Defendant states and alleges as follows:

1)     The United States's position was vexatious, frivolous, or in bad faith,

2)     Defendant prevailed in this litigation, the indictment having been dismissed with prejudice May 12, 2006, which is not more than 30 days prior to this filing, according to the rules for calculation of time,

3)     Defendant is an eligible "party" under 28 U.S.C. § 2412(d) (2) (B), in that his net worth is far less than $2 million dollars,

4)     Defendant seeks the sum of $38,919.95 as of June 9, 2006, plus reasonable fees incurred in the prosecution of this claim for attorney's fees, subsequent to June 9, 2006.

1

5)      An itemized statement listing the amounts sought and the reasons for the charges, from Defendant's attorney or expert stating the actual time spent and the rate at which the fees and expenses were computed, will be promptly supplied in a separate filing.

The government in this case charged the Defendant with 3 counts of wilful failure to file tax returns, and 3 counts of tax evasion each of which alleged as an element the failure to file tax returns. The years of prosecution were 1999, 2000, and 2001.

It is critically important to note that the statute of prosecution for all the years and all the counts was 26 U.S.C. § 7203.  The magistrate explained as follows, on the second appearance for the arraignment, beginning on page 7:

```
16          THE COURT:  They have cited the statutes
17    they say were violated.

18          MR. STILLEY:  Right.  I just want to make
19    sure that we're not going to have other statutes that
20    they say -- actually, it was other statutes that he
21    violated later on in the game.

22          THE COURT:  The statutes that they've
23    alleged to have been violated are listed in the
24    Indictment.  Unless there is a superseding indictment,
25    then you're both stuck with what's alleged in the
                          8
 1    Indictment.  You are.  He is.  They're not going to
 2    be -- okay.  I've said enough.

 3        You've got sections of the statute that the
 4    government is relying on for their Indictment.
```

To the uninitiated, making two trips from Fort Smith, Arkansas to Peoria, Illinois for purposes of arraignment might seem excessive.  However, in the context of a tax case such as this, a

determination of the nature and cause of the accusation is often well more than half the battle, as is demonstrated in this motion.

The precise determination of the charges which must be met is important for preventing the government from switching theories in a criminal case. It is also proper and necessary for the purpose of preventing the government from claiming that some merit might be found in another charge, for purposes of avoiding payment of the attorney's fees and costs of a clearly innocent Defendant, such as the Defendant in the instant case. Of course Defendant has no culpability for any other offense against the United States. Defendant simply intends to focus on the charges actually brought, since by this method the clear and complete impropriety of the government's position may be shown with a minimal amount of time and effort.

The Paperwork Reduction Act of 1995 (hereinafter sometimes "PRA of 1995") prohibits any person from being subject to any penalty regarding supplying information upon an information collection request form unless said form displays a valid OMB control number. See 44 U.S.C. §§§ 3501, 3507, 3512. These provisions offer "public protection" to the citizenry, who are given every reason to rely on these words of Congress.

The Commissioner, in the instruction booklet for years 1999, 2000 and 2001, placed the public on notice that:"You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number." Defendant had every legal right to rely upon this statement as well as the actual provisions of the PRA of 1995.

There are many violations of the Paperwork Reduction Act of 1995 regarding Form 1040 that the United States knew about prior to attempting to deprive the Defendant of his liberty.

44 U.S.C. § 3507(g) prohibits "The Director" from approving "a collection of information for a period in excess of 3 years." The OMB # 1545-0074 has appeared on form 1040 from 1995 through 2005. Likewise, any changes to any approved form must be pre-approved. See § 3507(h)(3). Changes have been made to the forms at least annually since 1995, but without the required approval.

The forms the United States claimed Defendant was required by law to file, but allegedly did not file as "required by law" fail to comply with the PRA of 1995 for many reasons, including but not limited to the following:

1) The forms do not inform the public of the legal right for the IRS to ask the public for the information sought on form 1040;

2) The forms do not inform the public why the IRS is asking for the information;

3) The forms do not inform the public how the IRS intends to use the information;

4) The forms do not tell the public what could happen if the IRS does not receive the information;

5) The forms do not inform the public their response is voluntary;

6) The forms do not inform the public their response is required to obtain a benefit;

7) The forms do not inform the public their response is mandatory under the law;

8) The forms do not inform the public of the statute giving the IRS the legal right to ask for the information;

11) The forms do not inform the public the IRS's legal right to ask for the information under any specific regulations or revenue procedures;

12) The forms do not contend that the IRS's legal right to ask for the information is not subject

to the Paperwork Reduction Act.

The 1040 forms relevant to this case are clearly forms subject to the PRA of 1995. They do not claim otherwise. However, they also on their face fail to comply with the clear mandates of the PRA of 1995. The government's disdain for the requirements of the PRA of 1995 are nowhere made more clear than by the appearance of the OMB # 1545-0074 in January 2006 on the 1040A, 1040ES, 1040EZ, 1040NR, 2555 and W-4 forms.

No Court has ever determined that the instruction booklets were subject to the Paperwork Reduction Act. In *U.S. v. Dawes*, 951 F.2d 1189, 1191 (10th Cir. 1991) the Court, speaking of the PRA of 1980, said:

> "The 1040 form is the information collection request which arguably must comply with the PRA. It is through the 1040 form that the government obtains all of the tax information it requires; the instructions and the regulations do not request any additional information...... As such, they are not independent information collection requests subject to the provisions of the PRA."

Footnote 2 of Dawes is highly instructive. There the 10th Circuit said:

> [fn2] In response to a question from the court during oral argument, counsel for the government indicated that the government did not have a unified federal position regarding this issue. Given the fact that the issue is one of national scope which affects the tax revenues of the United States, we find this posture regrettable.

The government has *chosen* to place OMB numbers on the 1040 form. The government has not given any citizen notice that it might claim that the form was not required to comply with the public protections of the PRA of 1995. Rather, the government has taken an ad hoc, case by case approach, tossing out irreconcilable and often silly claims among the various jurisdictions, and sometimes even within a jurisdiction.

In *Salberg v. U.S.*, 969 F.2d 379 (7th Cir. 1992) the 7th Circuit said:

[16] The Paperwork Reduction Act of 1980, 44 U.S.C. § 3501 et seq. (1988) (the PRA or the Act), was enacted in response to a concern that in its tireless quest for information, the federal bureaucracy was imposing an ever-increasing burden on citizens and small businesses. The PRA requires federal agencies to submit all "information requests" to the Office of Management and Budget (the OMB) for approval. Information requests include "tax forms, medicare forms, financial loan applications, job applications, questionnaires, compliance reports, and tax or business records." Dole v. United Steelworkers, 494 U.S. 26, 33, 110 S.Ct. 929, 933, 108 L.Ed.2d 23 (1990). If the Director of the OMB approves the information request, the Act requires that he assign it a control number. An agency may not attempt to collect information unless it has obtained the Director's approval along with a control number to display on the information request. 44 U.S.C. § 3507. If an agency's information request does not display an OMB number, "no person shall be subject to any penalty for failing to maintain or provide information" to the agency pursuant to the request. 44 U.S.C. § 3512.

*Salberg* and *Dawes* were both just after the Paperwork Reduction Act of 1980, and long before the Paperwork Reduction Act of 1995 now in place. These cases are of no assistance in determining why the government would fail to make a meaningful attempt at complying with the laudable purposes and reasonable mandates of the PRA of 1995. However, these cases do make it clear that a failure to comply with the public protections enacted by Congress renders criminal sanctions altogether improper and untenable, where the plain language of the statute creating the public protection prevents any punishment for failing to comply with a "bootleg" form.

This brings us back to the facts laid out at the start of the brief. The indictment charged a violation of **26 U.S.C. § 7203**. This statute is the sole statute, or the sole statute for a listed element of the count, with respect to every count of the complaint.

The 1040 form relied upon as the mandatory form with respect to every count of the indictment, fails miserably in having the mandatory disclosures on the form, although it does refer the

reader to the instruction booklets. These instruction booklets for the prosecution years, namely 1999, 2000, and 2001, say that the government's legal right to ask for the information comes from the Internal Revenue Code, sections 6001, 6011, and 6012 "and their regulations." The instructions say that these authorities "say you must file..."

    The government did not supersede or amend the indictment. The magistrate spoke truly when he said that the government was, in essence, stuck with the charges that they had brought, and could not make up new accusations as they went along. The government lawyers who directed the initiation of this proceeding were fully aware of the defects in their legal from long before the date of the arraignment.

    Defendant was indicted for violating 26 U.S.C. § 7203, whereas the Commissioner of Internal Revenue has never suggested, on the 1040 form or on the instruction booklets, that said statute forms any part of the authority for a filing requirement. Therefore, it is plain that a simple comparison of the instruction booklets and the indictment would inform a person of ordinary intelligence that the indictment did not charge a triable offense. Defendant was fully and absolutely protected by the PRA of 1995 from the charges in the indictment. Other charges that the government might have brought, if they had so chosen, are altogether irrelevant. The government chose its authority for the charge, and is no more at liberty to make up new charges now than it would be at liberty to make up new charges in the middle of a trial.

    It was only when the Defendant offered nothing in the way of disclosure save communications between the IRS and the Defendant, information clearly known beforehand to the government, and government forms pertinent to the PRA defense, that the government realized that the defense was also

aware of the fatal deficiencies in the government's theory of the case, and would focus on those deficiencies at trial. Upon the realization that the legal deficiencies of the government's case would be the focus of the trial, the government wisely chose not to proceed any further.

The indictment and prosecution was defective from its inception. High level government attorneys ordered the initiation of the prosecution from their lofty positions, and directed the honorable government counsel in this case to proceed. However, they did not inform government counsel of several extremely important facts, including the fact that:

1) The government has engaged in systematic harassment of JoY Foundation members, by investigations, audits, etc., even those members who have done nothing remotely approaching unlawful, unethical, or criminal acts. This suggests that the instant prosecution is part of an overall scheme to punish the exercise of First Amendment rights of association, expression, and petition.

2) The government sent a letter inviting Defendant to explain reasons, if he had any, why a prosecution should not commence. A hearing was held in Chicago, IL, at which undersigned counsel appeared and attempted to explain to the government why criminal charges were inappropriate. The officials at that meeting promised to permit undersigned counsel a chance to present his arguments in Washington, DC, if the matter was recommended for prosecution. Yet the indictment was sought and obtained without any further notice to counsel or to the Defendant.

The government's failure to keep its promise to allow undersigned counsel one last chance to talk the government out of its folly is one more reason to focus on the accusations actually made, and not other possibilities. Had undersigned counsel received his fair opportunity, he could have pointed out the defects in the government's case. Any "coulda, shoulda, woulda" theories of prosecution would

have been dealt with and annihilated if and when they were disclosed to undersigned counsel.

Defendant was a member of the public and he deserved the protection the public has been granted by Congress in the passage of the PRA of 1995. Defendant has suffered attorney's fees and costs in the amount of $38,919.95 as of June 9, 2006, and will certainly incur additional fees in the further prosecution of the instant motion. This level of expenditure is clearly reasonable for preparation of a major tax case with respect to which the magistrate informed the Defendant of a potential maximum imprisonment of 18 years imprisonment, and in the eyes of some qualifies as a "cheap date."

Cheap date or not, this prosecution has been financially devastating for the Defendant. These expenses take the bread from the Defendant's table. As the soon to be supplied bills will show, undersigned counsel felt so sorry for the Defendant in the early days that he discounted his services to approximately two thirds of his customary rate. A case of this nature is precisely the sort of case for which the Hyde Amendment was passed, and which cries out for restitution by the government. Of course the actual attorney's fees and costs expended amount to only a small portion of the real injury suffered by the Defendant.

The facts of this case, culminating in a dismissal of the indictment, leaves no question but that the Defendant should never have been charged. He should have been protected pursuant to the PRA of 1995, as well as the written words of the Commissioner of Internal Revenue.

WHEREFORE, Defendant requests that the Court order the government to pay the attorney's fees and costs laid out by the Defendant, including those specified herein as well as any further attorney's fees and costs reasonably incurred in the further prosecution of this motion; and for all such other and further relief as may be appropriate whether or not specifically prayed.

                                          By: /s/ Oscar Stilley
                                          Oscar Stilley, Attorney at Law
                                          2120 North B Street
                                          Fort Smith, AR 72901
                                          (479) 573.0726 phone
                                          (479) 573.0647 fax
                                          oscar@oscarstilley.com

**CERTIFICATE OF SERVICE**

I, Oscar A. Stilley, certify by my signature above that a copy of the foregoing was delivered by CM/ECF this June 11, 2006 to: Gerard A. Brost, Assistant US Attorney,
Suite 400, 211 Fulton Street, Peoria, IL 61602.