**E-FILED**
Friday, 23 June, 2006  02:19:47 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF ILLINOIS
AT PEORIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal No.  06 - 10019 |
| | ) | |
| ROBERT LAWRENCE, | ) | |
| | ) | |
| Defendant. | ) | |

UNITED STATES' RESPONSE TO DEFENDANT'S
<u>MOTION FOR ATTORNEY FEES AND COSTS</u>

The United States of America through its counsel, Rodger A. Heaton,

United States Attorney for the Central District of Illinois, and Gerard A. Brost,

Assistant United States Attorney, hereby responds to and opposes the

defendant's Motion for Attorney Fees and Costs.

**A.    Factual Background**

**1.    The Indictment and Two Arraignment Hearings**

On March 16, 2006, a federal grand jury indicted the defendant, Robert

Lawrence, charging the defendant with three counts of tax evasion under 26

U.S.C. § 7201 relative to years 1999, 2000 and 2001 and three counts of willful

failure to file income taxes under 26 U.S.C. § 7203 for the same years. (R.1)  On

March 28, 2006, an arraignment hearing was held before Judge John Gorman.

Defendant received a copy of the indictment, waived reading of the indictment

and moved to continue the arraignment which was granted.  (Docket Entry

3/28/06) At the second arraignment hearing on May 13, 2006, defendant

through his counsel again waived the reading of the indictment.  Defendant

entered a plea of not guilty to all six counts of the indictment.[1] Trial in the matter

was set for May 15, 2006.  (Docket Entry 4/13/06)

---

[1]In his Motion for Fees, the defendant claims that two trips from his home in Arkansas to Peoria for the arraignment hearings were justified because it was necessary to determine "the nature and cause of the accusation" of the charges in the indictment.  (R.29, p.3) Defendant cryptically claims that a continuance of the first arraignment was necessary to prevent the government from "switching theories" in this case. (R.29, p.3) Defendant states that because he was able to continue the arraignment he learned "[t]he indictment charged a violation of **26 U.S.C. § 7203**. This is the sole statute, or the sole statute for a listed element of the count, with respect to every count of the complaint." (R.29, p.6, emphasis in original.)  Similarly, defendant represents  "[i]t is critically important to note that the statute of prosecution for all the years and all the counts was 26 U.S.C. § 7203." (R.29, p.2)  As the Indictment in this case includes three counts charging the defendant with violations of  26 U.S.C. § 7201, government counsel is not sure by what logic the defendant claims that 26 U.S.C. § 7203 was the sole statute of prosecution.  It is also unclear what was gained by continuing the arraignment since the defendant pled not guilty to all charges, including those under § 7201. (Docket Entry 4/13/06)  Indeed, everything that transpired at the second arraignment hearing could have taken place at the first. Thus, it appears that having two arraignment hearings simply added unnecessary expense to the defense of this case.

## 2.    Discovery Issues and Motion to Continue Trial

Late on the afternoon of May 10, 2006**,** counsel for the defendant informed government counsel for the first time that documents which had not yet been disclosed to the government pertained to the Paperwork Reduction Act ("PRA") and that the PRA would be part of his defense. (R.20, ¶ 6-7) In part, because the government had not yet received the referenced documents and needed time to research the facts and law on the PRA, the government moved on the morning of May 11, 2006, for a short continuance of the trial date.  In that motion, the government stated that a continuance was also necessary because the defendant had failed to disclose the subject on which his three listed expert witnesses would testify and the defendant failed to provide contact information regarding some of his identified witnesses. (R.20)

On May 11, 2006, the Court held a hearing on the government's motion to continue and ordered the defendant to provide an expert witness list with written summaries and to provide affidavits regarding counsel's representation that he had no contact information regarding some his witnesses. (Docket Entry 5/11/06).

## 3.    Discovery of a Tax Calculation Error

Following the court hearing on the afternoon of May 11, 2006, the IRS

revenue agent and special agent who were assigned to this case reviewed certain tax calculations in preparation for trial. At that time the agents discovered that calculations which formed the bases of the charges against the defendant and which were set forth in the indictment were incorrect.

The IRS agents had previously calculated that the defendant had taxable income for 1999, 2000 and 2001 in the amounts of $51,679, $52,780 and $71,340 respectively. As set forth in the indictment, these amounts of taxable income led to tax liabilities in the amount of $10,275, $11,927 and $9,453 for those years. The amount of taxable income the IRS agents attributed to the defendant consisted primarily of the income the defendant earned from his job at Mitsubishi. The agents' calculations of taxable income for years 1999 and 2001, however, also included amounts the defendant apparently gained from the sale of rental property in each of those years.

In calculating those gains, the case agent determined the sales price of each property and subtracted what she believed was the defendant's basis in each property. The figure the case agent used for the defendant's basis in each property was the amount the defendant listed in his 1998 tax return under "Basis for depreciation." This was a mistake.

As the agents discovered on the afternoon of May 11, the figures the

4

defendant listed in his 1998 tax return as "Basis for depreciation" was not the defendant's actual basis in the properties but was instead the amount the defendant claimed he had spent in 1998 for improvements to each property. Indeed, the agents further discovered on the afternoon of May 11 that the defendant had reported on his 1996 tax return that he had spent in 1996 the same amount of money he supposedly spent in 1998 also to improve one of the two properties. If the defendant's claims about the cost of improvements were accurate, then, contrary to the IRS's calculation of his gains, the defendant sold one of the two properties for a loss and he sold the other property for a substantially lower gain than the IRS had previously calculated.

Regardless of whether the defendant actually spent any money to improve either property, the IRS's previous calculation of the defendant's taxable income for two years was erroneous. Those calculations used a figure for the defendant's basis in sale property that was not accurate. For purposes of recalculating the defendant's taxable income for the two years in question, the agents accepted as true the amounts the defendant had previously claimed to have spent to improve the two properties. Adjusting for those claimed improvements led to a recalculation of the defendant's taxable income in the amount of $40,350 for 1999 and $41,340 for 2001.  This resulted in a tax due and owing by the defendant of

5

$7,111 for 1999 and $702 for 2001.  The calculations for 2000 were correct.

On the afternoon of May 11, 2006, the agents brought the calculation error to the attention of counsel for the government.

### 4.    Dismissal of  Charges

On the morning of May 12, 2006, the Court convened a telephone conference to determine whether the concerns raised by the government in its motion to continue had been addressed.  The government noted that it received the outstanding information regarding the PRA and witnesses. Further, the defendant indicated that he would not rely on any expert witnesses.  Because government counsel had sufficient time in a matter of hours to research the PRA and to conclude that the defendant's argument was without merit, he stated that the government would be filing a motion in limine.  The United States withdrew its motion to continue.  (Docket Entry 5/12/06)

During the May 12th conference with the Court, but not reflected in the Minute Entry, counsel for the government informed the court and the defendant that they had recently discovered an error in the dollar amounts set forth in certain counts the indictment.  The government orally moved to amend the indictment by interlineation.  The defendant objected, and the court denied the government's request.

After that conference, the government evaluated its options in light of the tax calculation errors contained in the indictment. Based upon the recommendation of the IRS to dismiss all counts and the government's belief that the errors were serious enough to undermine the jury's confidence in the government's case, the government determined to dismiss the case with prejudice. As soon as the decision was finalized, counsel for the government notified defendant's counsel and the Court of its intention to dismiss the charges against the defendant. The motion in limine regarding the PRA issue, though in the process of being finalized, was never filed.

### 5.    Defendant's Motion for Fees

On June 11, 2006, the defendant filed a Motion for Attorneys Fees and Costs (R.29) in which he argues that under the Hyde Amendment he is entitled to fees because the prosecution of the defendant in light of the restrictions imposed by the PRA was vexatious, frivolous or in bad faith.

As discussed below, the defendant is not entitled to attorneys fees or costs under the Hyde Amendment and his motion should be denied.

### B.    Hyde Amendment

The Hyde Amendment was enacted by Congress as part of a 1998 appropriations bill and is located in a Statutory Note to 18 U.S.C. § 3006A; *United*

7

*States v. Gilbert*, 198 F.3d 1293, 1298 (11ᵗʰ Cir. 1998). It provides in pertinent part:

> . . . the court may in any criminal case (other than
> a case in which the defendant is represented by
> assigned counsel paid for by the public) . . . award to
> a prevailing party, other than the United States, a
> reasonable attorney's fee and other litigation expenses,
> where the court finds that the position of the United States
> was vexatious, frivolous or in bad faith, unless the court
> finds that special circumstances make such an award
> unjust.

Statutory Note to 18 U.S.C. § 3006A.

A defendant has been held to be a prevailing party where the government voluntarily dismissed the charges against him. *United States v. Gardner*, 23 F. Supp.2d 1283, 1291 (N.D. Okla.1998). Merely prevailing, however, is insufficient to establish entitlement to attorneys fees under the Hyde Amendment. The Hyde Amendment "places a daunting obstacle before defendants who seek to obtain attorney fees and costs from the government following a successful defense of criminal charges." *United States v. Gilbert*, 198 F.3d 1293, 1302-03 (11th Cir. 1999).

The Hyde Amendment requires prevailing federal criminal defendants to recover expenses incurred in defending criminal charges to establish that the position of the United States was "vexatious, frivolous, or in bad faith, unless, the court finds that special circumstances make such an award unjust." Pub.L. No. 105-119, § 617, 111 Stat. 2440, 2519 (1997); *United States v. Braunstein*, 281 F.3d 982,

8

994 (9th Cir. 2002).  In deciding a defendant's motion, the district court must analyze the case as a whole, not count by count. *United States v. Heavrin*, 330 F.3d 723, 730 (6th Cir. 2003). The defendant bears the burden of meeting any one of the three grounds under the statute, and acquittal by itself does not suffice. See *United States v. True*, 250 F.3d 410, 424 (6th Cir. 2001); *United States v. Adkinson*, 247 F.3d 1289, 1291 (11th Cir. 2001).

"Vexatious" means "without reasonable or probable cause or excuse" *Gilbert*, 198 F.3d at 1298.   A "frivolous action" is one that is "groundless . . . with little prospect of success; often brought to embarrass or annoy the defendant." *Id.* at 1299.   A case is frivolous when "the government's position was foreclosed by binding precedent or so obviously wrong as to be frivolous." *United States v. Braunstein*, 281 F.3d 982, 995 (9th Cir. 2002).   "Bad faith" under the Hyde Amendment is "not simply bad judgment or negligence, but rather . . . the conscious doing of a wrong because of dishonest purpose or moral obliquity; . . . it contemplates a state of mind affirmatively operating with furtive design or ill will." *True,* 250 F.3d at 423.

"To be eligible for fees as a result of having prevailed on a legal defense, the defendant must show that the government's legal position was either asserted in bad faith or without any legal foundation or basis for belief that it

might prevail." *Gilbert* 198 F.3d at 1303.

"[I]f the movant is unable even to establish that the prosecution was not substantially justified, he certainly cannot establish that it was vexatious, frivolous, or brought in bad faith." *United States v. Truesdale*, 211 F.3d 898, 909 (5th Cir. 2000).

In the instant case, the defendant cannot meet his burden to establish that the prosecution was vexatious, frivolous or brought in bad faith.  In his motion for attorney's fees, the defendant argues that he is entitled to attorney fees because the Paperwork Reduction Act ("PRA") clearly bars the defendant from being prosecuted for failure to file federal income tax returns and tax evasion and the government knew it.

As discussed below, the defendant is wrong.  First, he is wrong on the law.  The PRA does not shield him from a prosecution for tax evasion and failure to file his tax returns.  All the cases reviewing this issue find for the government.  The defendant has cited no cases that support his position and there are none.  Thus, the defendant has failed to show that he is entitled to legal fees under the Hyde Amendment based upon his legal theory.[2]

---

[2]  Even if the defendant in this case were entitled to his fees (and he is not), the defendant's attorney's billing statement shows fees charged in excess of the $125 per hour maximum allowed under 28 U.S.C. § 2412(a)(2)(A).  Any amounts

Second, the basis for the dismissal of the case against the defendant had nothing to do with the PRA or any other legal theory advanced by the defendant. The case was dismissed because of facts unique to this case. The IRS made a significant error in determining the defendant's tax liabilities relative to two of the three years involved in this case. Once the government's counsel became aware of the error, the matter was brought to the attention of the IRS and with the US Attorney for the Central District of Illinois. After a thorough discussion of possible options, and based upon a belief that the errors may impair a successful prosecution of the defendant, a decision was made to dismiss the charges against the defendant.

**B.     Paperwork Reduction Act**

The defendant assumes that the reason the government dismissed the case against him was based upon his defense that the Paperwork Reduction Act ("PRA") protected him from having to file his annual tax returns for 1999, 2000 and 2001.

This is not true. The United States did not dismiss this case based upon the PRA. The argument that the PRA somehow insulates a person from having

in excess of the maximum should not be allowed under any circumstance.

11

to file an annual tax return is completely without merit.

The government acknowledges that the instructions to Form 1040 for the years in question, as noted by the defendant in his motion for fees, do contain a statement that a taxpayer is not required to submit information requested on a form that is subject to the PRA unless the form displays a valid OMB control number.[3]  However, the defendant failed to a note a following paragraph in the instructions which reads:

> If you do not file a return, do not provide the information we ask for, or provide fraudulent information, you may be charged penalties and be subject to criminal prosecution.

(See, Exhibit B attached hereto)  The long-established law provides that the PRA is not a bar to prosecution of a taxpayer who, like the defendant, fails to file his tax returns or attempts to evade his taxes.

The PRA, 44 U.S.C. § 3501 *et seq.*, requires all federal agencies to submit all "information requests" to the Office of Management and Budget ("OMB") for approval.  Information requests include "tax forms, medicare forms, financial loan forms, job applications, questionaires, complaince reports and tax or business records."  *Dole v. United Steelworkers*, 494 U.S. 26, 33 (1990).

---

[3] In the instant case, the Federal Income Tax Forms 1040 for the years in question, 1999 through 2001, do display OMB numbers.  (See, Exhibit B)

The PRA of 1995, 44 U.S.C. § 3512(a) provides that "[N]otwithstanding any other provision of law, no person shall be subject to any penalty for failing to comply with a collection of information" that lacks a currently valid OMB control number. § 3512(b) provides: "The protection provided by this section may be raised in the form of a complete defense, bar, or otherwise at any time during the . . . judicial action applicable thereto."[4]

The argument goes that the IRS Forms 1040 and related schedules and/or the publications and instructions relative to the Form and schedules either have no OMB number or do not have a valid OMB number. The conclusion is that because the IRS' tax forms do not contain a valid OMB number Section 3512 precludes prosecution for failing to file an income tax return.

These arguments have been uniformly rejected by all courts that have considered them, including the Seventh Circuit. In *Salberg v. United States*, 969 F.2d 379 (7th Cir. 1992), the defendant was convicted of two counts of failure to file income tax returns (26 U.S.C. § 7203) and one count of tax evasion (26 U.S.C.§

---

[4] Prior to its amendment in 1995, 44 U.S.C. § 3512 provided: "Notwithstanding any other provision of law, no person shall be subject to any penalty for failing to maintain or provide information to any agency if the information collection request involved was made after December 31, 1981, and does not display a current control number assigned by the Director, or fails to state that such request is not subject to this chapter."

13

7201).  In attacking his conviction the defendant argued, *inter alia,* that the relevant IRS regulations and the 1040 instruction books do not comport with the requirements of the PRA and, therefore, the PRA defense barred his prosecution for failure to file a tax return. *Id* at 384.  The Seventh Circuit held that the PRA was intended to apply to agency regulations, it does not prevent a prosecution for violation of a statute. "It was a federal statute – 26 U.S.C. § 7203 – not a regulation or an instruction book that required Salberg to file an income tax return.  Statutes are not subject to the PRA and, as the government points out in its brief, every court that has considered the argument that the regulations and the instruction books . . . are within the scope of the PRA has rejected it. . . . We do the same." *id.* at 384.  *See also, United States v. Ryan*, 969 F.2d 238 (7th Cir. 1992) in which the defendant who was convicted of failing to file federal income tax returns, 26 U.S.C. § 7203, argued the PRA barred his conviction.  The Seventh Circuit held that the PRA is not applicable to IRS instruction booklets as they do not independently seek information from the taxpayer.

As the Seventh Circuit noted in *Salberg*, every court to consider the PRA defense to failure to file tax returns has rejected it.  In *United States v. Neff*, 954 F.2d 698, 699 (11th Cir. 1992) the Eleventh Circuit Court of Appeals found that the defendant's duty to file tax returns was a statutory requirement.  Congress in

14

enacting the PRA did not intend to allow OMB to abrogate any duty imposed by Congress. "So the PRA provides Neff no refuge from his statutorily-imposed duty to file income tax returns." *id.* at 700. Similarly, the Eighth Circuit in *United States v. Holden*, 963 F.2d 1114 (8th Cir. 1992) rejected the defendant's contention that his conviction for willful failure to file tax returns should be overturned because the tax instruction booklets failed to comply with the PRA. In *United States v. Dawes*, 951 F.2d 1189 (10th Cir. 1991) the defendants appealed their conviction for their failure to file tax returns alleging that the IRS tax return forms did not have valid OMB numbers and, therefore, the PRA prohibited their prosecution. Affirming the convictions, the Tenth Circuit found "This [PRA] argument or some permutation thereof, has been raised recently in federal district courts around the country. The response from the courts has been diverse, but no court has excused the failure to file on these grounds. " *id.* at 1191. In *United States v. Hicks*, 947 F.2d 1356 (9th Cir. 1991) the Court rejected the defendant's PRA argument and affirmed his conviction for willful failure to file federal income tax returns. The Ninth Circuit held that even if "the IRS failed to comply with the PRA here, its failure does not prevent Hicks from being penalized." *id* at 1359. In *United States v. Kerwin*, 945 F.2d 92 (5th Cir. 1991) the defendant's conviction for willful failure to file his tax returns would not be

overturned as the Fifth Circuit found even if there were no OMB numbers on the

income tax returns, the PRA did not bar prosecution of defendant who was

required by statute to file a return.  Likewise, in *United States v. Wunder*, 919 F.2d

34 (6th Cir. 1990) the defendant's conviction for willful failure to file federal

income tax returns was affirmed as the PRA does not apply to the statutory

requirement to file those returns.  *See also, United States v. Burdett*, 768 F. Supp.

409, 413 (E.D.N.Y. 1991)(court found "that the PRA does not stand as a defense to

a *criminal* prosecution (emphasis in original)); *United States v. Foster*, 1997 WL

685371 (D. Minn. 1997) (court assumed without deciding that the pertinent 1040

forms bore an inaccurate OMB number; nevertheless, the court rejected the

defendant's PRA argument on the basis that the PRA was not intended to be a

defense to the defendant's statutory obligations.)

Thus, the courts are unanimous in holding the PRA does not create a valid

defense to a prosecution for failure to file a federal income tax return.  As the

Ninth Circuit Court of Appeals reasoned in *Hicks:*

> Moreover, the provision of the tax code under
> which Hicks was convicted predates the PRA by over
> 25 years.  If, in enacting the PRA, Congress had intended
> to repeal 26 U.S.C. § 7203, it could have done so explicitly.
> Repeals by implication are not favored . . . Congress
> enacted the PRA to keep agencies, including the IRS,
> from deluging the public with needless paperwork.  It did
> not do so to create a loophole in the tax code.

> We hold that the public protection provision of the PRA, 44 U.S.C. § 3512, constitutes no defense to prosecution under 26 U.S.C. § 7203. To hold otherwise – to interpret the PRA without reference to Congress' purpose – would be to elevate form over substance.

947 F.2d at 1359-60.

It is expected that the defendant will argue that these cases were all decided under the PRA of 1980, the PRA was amended in 1995 and, therefore, the above-cited cases are inapplicable here. However, since the amendment of the PRA in 1995, all courts to consider this argument have also rejected it. For example, in *Saxon v. Commissioner of Internal Revenue*, 2006 WL 741384, T.C. Memo 2006-52, United States Tax Court, March 23, 2006) the taxpayer claimed that he was not liable for federal taxes because the OMB control number 1545-0074 on the Form 1040 was invalid for failure to comply with the PRA. The Tax Court held "[c]laims that violation of the PRA excuses a taxpayer from filing returns and/or paying taxes have been considered and universally rejected as meritless by this and other courts." In *Faber v. United States*, 69 F.Supp. 965, 969 (W.D.Mich.1999) the taxpayer sought to quash administrative IRS summons on the ground that there was no valid OMB number on the summons. The court relied upon precedent finding that even if the lack of an OMB number actually constituted a statutory violation, this did not excuse the taxpayer from

17

complying with the summons.  Most recently, in *Springer v. United States*, 06-0110 (N.D. Okla., decided June 21, 2006), the plaintiff sought to enjoin the IRS from penalizing him for failing to file federal income tax returns.  The plaintiff relied on the public protection provision of the PRA.  The district court dismissed the plaintiff's complaint finding that under "settled law" "the requirement to file a tax return is mandated by statute, not by regulation" and "such explicit statutory requirements are not subject to the PRA." *id.* at p. 4, citing *United States v. Dawes, supra.* (A copy of *Springer* is attached hereto as Exhibit C).

In the instant case, the defendant can point to no change in the law which could lead to a conclusion that the above cases are inapplicable here.

In fact, the regulations implementing the PRA of 1995 explicitly provide that the protections of the PRA do not bar a penalty action for failure to comply with the statutory requirements of the Internal Revenue Code.  5 C.F.R. § 1320.6(e) states the general rule that no person shall be subject to penalties for failure to comply with the information request where there is no valid OMB number; however, this section "does not preclude the imposition of a penalty on a person for failing to comply with a collection of information that is imposed on the person by statute - e.g. 26 U.S.C. § 6011(a) (statutory requirement for a person to file a tax return) . . . ."

18

The discussion regarding the proposed rule changes under the PRA supports the government's position in this case.  See, *Controlling Paperwork Burdens on the Public: Regulatory Changes Reflecting Recodification of the Paperwork Reduction Act*, 60 Fed.Reg. 30438; 1995 WL 337826 (1995).   The proposed rule changes relative to the PRA of 1995 discuss the new provision of 5 C.F.R. § 1320.6(e) discussed above in which it is stated:

> Proposed § 1320.6(e) is new.  This paragraph points out that under existing law, the public protections provided under § 1320.6(a) do not preclude the imposition of a penalty on a person for failing to comply with a collection of information that is imposed by statute, e.g. 26 U.S.C. § 6011(a) (statutory requirement for a person to file a tax return) . . .

> This paragraph is based on the principle announced by the courts in several cases which addressed the issue of whether the public protection provided by 44 U.S.C. § 3512 could preclude the Federal government from prosecuting persons for their failure to perform paperwork duties imposed upon them by statute.  See *Salberg v. United States*, 969 F.2d 379 (7th Cir. 1992); *United States v. Neff*, 954 F.2d 698 (11th Cir. 1992); *United States v. Dawes*, 951 F.2d 1189 (10th Cir. 1991); *United States v. Hicks*, 947 F.2d 1356 (9th Cir. 1991); *United States v. Wunder*, 919 F.2d 34 (6th Cir. 1990).  In those cases, the courts concluded that Congress, in enacting the Paperwork Reduction Act, did not intend to require itself to comply with the requirements of that Act (and seek and obtain OMB approval) whenever Congress decides to impose a paperwork requirement on persons directly by statute.

> There is no legislative history pertinent to the [PRA] of 1995 that suggests that Congress intended to change this court

19

interpretation for 44 U.S.C. 3512.

60 FR 30438, 30441. (Footnote analyzing cases omitted)

Thus, the case law set forth above applies to the PRA of 1995 as it did to the original PRA of 1980.

The government did not and would not dismiss an indictment based upon defendant's proposed PRA defense as it has absolutely no support and, as discussed above, the law is clear that the PRA argument, no matter what its permutations, offers no defense to a criminal prosecution for willful failure to file federal tax returns or tax evasion.

Plaintiff's request for attorney's fees based upon his flawed legal theory should be denied.

## C.  Good Faith

The government brought this case in good faith having sufficient evidence to establish that the defendant had willfully attempted to evade his taxes for years 1999 through 2001.  The government also had sufficient evidence to establish that he had willfully failed to file his tax returns for those years.

In order to establish the defendant's guilt on the charges of tax evasion under 26 U.S.C. § 7201, the government needs to prove willfulness, the existence of a tax deficiency and an affirmative act constituting an evasion or attempted

20

evasion of tax.  *United States v. Sloan*, 939 F.2d 499, 501 (7th Cir. 1991).  The filing

of a false W-4 constitutes an affirmative act of evasion. *Id.*  In order to establish

the defendant's liability under 26 U.S.C. § 7203 for willful failure to file his tax

returns, the government needs to show that the defendant was required to make

a return and he willfully failed to do so.  *United States v. Harris*, 942 F.2d 1125,

1128 (7th Cir.  1991).  A tax deficiency is not an element of willful failure to file tax

returns under § 7203. *Spies v. United States*,  317 U.S. 492, 496 (1943).

In the instant case, for all three years at issue, the United States had

evidence to establish these elements.  Government had evidence that the

defendant had gross income in an amount that exceeded the minimum filing

threshold.  The Government had evidence that the defendant had gross income

in the amounts of $40,350, $52,780, and $41,340 for 1999 through 2001, and thus

was required to file returns for those years.  The defendant filed false W-4's for all

three years.  He had previously filed his tax returns prior to the years at issue, so

he knew of the obligation to do so, yet failed to do so for the years in question.

Although the taxes were miscalculated, the defendant nevertheless did have a

tax deficiency, albeit, it might not have been as large as originally contemplated.[5]

---

[5] In a prosecution under 26 U.S.C. § 7201, the government needs to prove
every element of the offense beyond a reasonable doubt though not to a
mathematical certainty. *U.S. v. Thompson*, 806 F.2d 1332, 1335 (7th Cir. 1986).

Counsel for the government had no notice of the errors in calculations until the afternoon of May 11, 2006.  Counsel had to verify the calculations and discuss the available  options which included dismissing some but not all of the counts and proceeding to trial. The indictment correctly set forth the defendant's tax liabilities for the year 2000 and discussion was had on what options were available to the government under the circumstances.

 The government ultimately determined to dismiss all charges because two of the three years contained a miscalculation of the defendant's taxable income and the tax amount owed.  Confronted with these miscalculations, the government had to weigh the risks of going forward with legally viable charges to prove to the jury that the defendant was guilty beyond a reasonable doubt, believing these miscalculations might loom large in the jury's deliberations. After much discussion between the United States Attorneys Office and the Internal Revenue Service, and based upon a consensus of opinions, it was decided to dismiss the charges in their entirety.

The sole basis for the defendant's request for attorneys fees is that the government dismissed the case based upon the PRA.  This claim is not true and, based upon the well-established law, is a frivolous position.  The dismissal was

based upon a miscalculation of the debtor's tax liabilities.  There has been no vexatious, frivolous or bad faith prosecution in this case and attorneys fees are not warranted under the Hyde Amendment.

### D.  Conclusion

For the reasons set forth above, the defendant's Motion for Attorney Fees and Costs should be denied.

Respectfully submitted,

UNITED STATES OF AMERICA
RODGER A. HEATON
UNITED STATES ATTORNEY

 s/: Gerard A. Brost
Gerard A. Brost
Assistant United States Attorney
United States Attorney's Office
One Technology Plaza, Suite 400
211 Fulton Street
Peoria, Illinois 61602

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 23, 2006, electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

**Oscar A. Stilley**
OSCAR STILLEY ATTORNEY AT LAW
2120 North B St
Ft Smith, AR 72901


 s/:  Kim Ritthaler
                Legal Assistant

**E-FILED**
Friday, 23 June, 2006  02:20:08 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF ILLINOIS
AT PEORIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal No.  06 - 10019 |
| | ) | |
| ROBERT LAWRENCE, | ) | |
| | ) | |
| Defendant. | ) | |

<u>DECLARATION OF IRS SPECIAL AGENT KATHY JO MCBRIDE</u>

I, Kathy Jo McBride, hereby state under penalties of perjury, the following:

1.   I am a Special Agent with the United States Department of Treasury, Internal Revenue Service (IRS).  I have been employed by the IRS for 15 ½ years. I have been a Special Agent for 13 years and 9 months.  Prior to becoming a Special Agent in September 1992, I was a Revenue Agent for 1 year and 9 months.

2.   As a Special Agent with the IRS, I was assigned to a criminal investigation regarding the defendant, Robert Lawrence.

3.   As part of the IRS's investigation of Mr. Lawrence, I interviewed witnesses and collected records, among other things. In the course of that investigation, I determined that Mr. Lawrence's primary source of income for the years 1999, 2000 and 2001 was his employment at Mitsubishi Motors. I also

Ex. A

determined that Mr. Lawrence had owned two rental properties, one of which he sold in 1999 and the other of which he sold in 2001.

4.   As part of the IRS's investigation of Mr. Lawrence, I calculated Mr. Lawrence's tax liability for the years 1999, 2000, and 2001. In computing Mr. Lawrence's taxable income for 1999 and 2001, I included the amounts that I calculated as the gains he received on the sales of the rental properties in those two years. In determining Mr. Lawrence's gain on the sale of each property, I used as the sales price a figure I obtained from county records that reported that sale of the property. From that figure I subtracted the amount the defendant listed in his 1998 tax return under "Basis for depreciation."  The figure I used for that basis was the same for each property. I found that figure, listed twice, on Line 15h of the Form 4562 ("Depreciation and Amortization") attached to Mr. Lawrence's Form 1040 for 1998. The figure is listed twice under Column C which is labeled "Basis for depreciation." I now realize that the figure that Mr. Lawrence placed twice in that column does not reflect the total amount he claimed to be the basis in each property. Rather, it reflects the cost of improvement Mr. Lawrence claimed he made to each property in 1998.

5.   Using the figure I found on Mr. Lawrence's Form 4562 for 1998 as his basis in each property, I calculated that his sale of each property generated a significant capital gain. For each of the two relevant years, I added the calculated gains to other income figures, subtracted certain other amounts, and arrived at amounts for Mr. Lawrence's taxable income. I then prepared a Special Agent's Report ("SAR"), which reported the amounts of taxable income for Mr. Lawrence

for 1999, 2000, and 2001 as $51,679, $52,780 and $71,340 respectively.  Based on those amounts, I also calculated Mr. Lawrence's tax liabilities in the amount of $10,275, $11,927 and $9,453 for those years.

6.  In March 2006, prior to the indictment, Revenue Agent Rose Shawgo prepared a Revenue Agent's Report to verify that the figures that I had computed were correct.  RA Shawgo determined that Lawrence had taxable income for 1999, 2000 and 2001 in the amounts of $51,679; $52,780 and $71,340 respectively. RA Shawgo computed Lawrence's tax due and owing for 1999, 2000 and 2001 in the amounts of $10,275; $11,927; and $9,453 respectively, for a total of $31,655. The $300 difference in 2001 from the tax previously calculated was due to a tax credit of $300 that would have been given to Lawrence by the civil side of the IRS.

7.   Robert Lawrence was indicted in March 2006.  The Indictment set forth Lawrence's taxable income and unpaid tax liabilities relative to years 1999, 2000 and 2001.

8.  The taxable income computations and tax due and owing computation for these three years were considered accurate until the afternoon of May 11, 2006 when RA Shawgo and I were reviewing the evidence in preparation for trial.  At that time, we for the first time found errors in the computations for the years 1999 and 2001.

9. On the afternoon of May 11, 2006, RA Shawgo and I were going through the evidence when it was discovered that there were some claimed improvement expenses made in prior years that were not considered in the computation of gain or loss on the sale of two rental properties in 1999 and 2001.

10. SA Shawgo and I discovered that the figures the defendant listed in his 1998 tax return as "Basis for depreciation" were not the defendant's actual basis in the properties but were instead the amounts the defendant claimed he had spent in 1998 for improvements to each property. We further discovered on the afternoon of May 11 that the defendant had reported on his 1996 tax return that he had spent in 1996 the same amount of money he supposedly spent in 1998 also to improve one of the two properties. If the defendant's claims about the cost of improvements were accurate, then, contrary to our prior calculation of his gains, the defendant sold one of the two properties for a loss and he sold the other property for a substantially lower gain than had been previously calculated.

11. For purposes of recalculating the defendant's taxable income for the two years in question, we accepted as true the amounts the defendant had previously claimed to have spent to improve the two properties.

12. Adjusting for those claimed improvements led to a recalculation of the defendant's taxable income in the amount of $40,350 for 1999 and $41,340 for 2001. This resulted in a tax due and owing by the defendant of $7,111 for 1999 and $702 for 2001. The calculations for 2000 were correct. This adjustment

reduced the total tax due and owing computation for all three years from $31,655 to $19,740.

13. When Rose Shawgo and I discovered the miscalculations on the afternoon of May 11, 2006, we notified Assistant United States Attorneys Gerard A. Brost and Tate Chambers who were preparing this case for trial.

Further, the affiant sayeth not.

I hereby declare under penalty of perjury that the information set forth above is true and accurate to the best of my knowledge, information and belief.

Date:

Kathy Jo McBride
Special Agent, Internal Revenue Service

E-FILED
Friday, 23 June, 2006  02:20:35 PM
Clerk, U.S. District Court, ILCD

Form **1040**   Department of the Treasury—Internal Revenue Service
**U.S. Individual Income Tax Return** **1999**    (99)  IRS Use Only—Do not write or staple in this space.

For the year Jan. 1–Dec. 31, 1999, or other tax year beginning _____ , 1999, ending _____      OMB No. 1545-0074

## Label

(See instructions on page 18.)

Use the IRS label. Otherwise, please print or type.

| L A B E L   H E R E | | |
|---|---|---|
| Your first name and initial | Last name | Your social security number |
| If a joint return, spouse's first name and initial | Last name | Spouse's social security number |
| Home address (number and street). If you have a P.O. box, see page 18. | Apt. no. | |
| City, town or post office, state, and ZIP code. If you have a foreign address, see page 18. | | |

▲ **IMPORTANT!**
You must enter your SSN(s) above.

**Presidential Election Campaign** (See page 18.)

|  | Yes | No | Note. Checking "Yes" will not change your tax or reduce your refund. |
|---|---|---|---|
| Do you want $3 to go to this fund? | | | |
| If a joint return, does your spouse want $3 to go to this fund? | | | |

## Filing Status

Check only one box.

1 ☐ Single
2 ☐ Married filing joint return (even if only one had income)
3 ☐ Married filing separate return. Enter spouse's social security no. above and full name here. ▶
4 ☐ Head of household (with qualifying person). (See page 18.) If the qualifying person is a child but not your dependent, enter this child's name here. ▶
5 ☐ Qualifying widow(er) with dependent child (year spouse died ▶ 19___ ). (See page 18.)

## Exemptions

If more than six dependents, see page 19.

| | | | | No. of boxes checked on 6a and 6b _____ |
|---|---|---|---|---|
| 6a ☐ Yourself. If your parent (or someone else) can claim you as a dependent on his or her tax return, do not check box 6a. | | | | |
| b ☐ Spouse | | | | |

c Dependents:

| (1) First name    Last name | (2) Dependent's social security number | (3) Dependent's relationship to you | (4) ✓ if qualifying child for child tax credit (see page 19) |
|---|---|---|---|
| | | | ☐ |
| | | | ☐ |
| | | | ☐ |
| | | | ☐ |
| | | | ☐ |
| | | | ☐ |

No. of your children on 6c who:
• lived with you
• did not live with you due to divorce or separation (see page 19)
Dependents on 6c not entered above _____
Add numbers entered on lines above ▶

d Total number of exemptions claimed

## Income

Attach Copy B of your Forms W-2 and W-2G here. Also attach Form(s) 1099-R if tax was withheld.

If you did not get a W-2, see page 20.

Enclose, but do not staple, any payment. Also, please use Form 1040-V.

| | | | |
|---|---|---|---|
| 7 | Wages, salaries, tips, etc. Attach Form(s) W-2. | 7 | |
| 8a | Taxable interest. Attach Schedule B if required | 8a | |
| b | Tax-exempt interest. DO NOT include on line 8a | 8b | |
| 9 | Ordinary dividends. Attach Schedule B if required | 9 | |
| 10 | Taxable refunds, credits, or offsets of state and local income taxes (see page 21) | 10 | |
| 11 | Alimony received | 11 | |
| 12 | Business income or (loss). Attach Schedule C or C-EZ | 12 | |
| 13 | Capital gain or (loss). Attach Schedule D if required. If not required, check here ▶ ☐ | 13 | |
| 14 | Other gains or (losses). Attach Form 4797 | 14 | |
| 15a | Total IRA distributions   15a _____   b Taxable amount (see page 22) | 15b | |
| 16a | Total pensions and annuities   16a _____   b Taxable amount (see page 22) | 16b | |
| 17 | Rental real estate, royalties, partnerships, S corporations, trusts, etc. Attach Schedule E | 17 | |
| 18 | Farm income or (loss). Attach Schedule F | 18 | |
| 19 | Unemployment compensation | 19 | |
| 20a | Social security benefits   20a _____   b Taxable amount (see page 24) | 20b | |
| 21 | Other income. List type and amount (see page 24) _____ | 21 | |
| 22 | Add the amounts in the far right column for lines 7 through 21. This is your **total income** ▶ | 22 | |

## Adjusted Gross Income

| | | | |
|---|---|---|---|
| 23 | IRA deduction (see page 26) | 23 | |
| 24 | Student loan interest deduction (see page 26) | 24 | |
| 25 | Medical savings account deduction. Attach Form 8853 | 25 | |
| 26 | Moving expenses. Attach Form 3903 | 26 | |
| 27 | One-half of self-employment tax. Attach Schedule SE | 27 | |
| 28 | Self-employed health insurance deduction (see page 28) | 28 | |
| 29 | Keogh and self-employed SEP and SIMPLE plans | 29 | |
| 30 | Penalty on early withdrawal of savings | 30 | |
| 31a | Alimony paid   b Recipient's SSN ▶ _____ | 31a | |
| 32 | Add lines 23 through 31a | 32 | |
| 33 | Subtract line 32 from line 22. This is your **adjusted gross income** ▶ | 33 | |

Ex. B

Form 1040 (1999)    Page **2**

| | | | |
|---|---|---|---|
| **Tax and Credits** | 34 | Amount from line 33 (adjusted gross income) . . . . . . . . . . | 34 |

35a Check if: ☐ **You** were 65 or older, ☐ Blind; ☐ **Spouse** was 65 or older, ☐ Blind.
Add the number of boxes checked above and enter the total here ▸ 35a ☐

b If you are married filing separately and your spouse itemizes deductions or
you were a dual-status alien, see page 30 and check here . . . . . . . ▸ 35b ☐

**Standard Deduction for Most People**

Single: $4,300

Head of household: $6,350

Married filing jointly or Qualifying widow(er): $7,200

Married filing separately: $3,600

36 Enter your **itemized deductions** from Schedule A, line 28, **OR standard deduction** shown on the left. But see page 30 to find your standard deduction if you checked any box on line 35a or 35b or if someone can claim you as a dependent . . . . | 36 |

37 Subtract line 36 from line 34 . . . . . . . . . . . . . . . | 37 |

38 If line 34 is $94,975 or less, multiply $2,750 by the total number of exemptions claimed on line 6d. If line 34 is over $94,975, see the worksheet on page 31 for the amount to enter . | 38 |

39 **Taxable income.** Subtract line 38 from line 37. If line 38 is more than line 37, enter -0- . | 39 |

40 Tax (see page 31). Check if any tax is from a ☐ Form(s) 8814  b ☐ Form 4972 . ▸ | 40 |

41 Credit for child and dependent care expenses. Attach Form 2441 | 41 |

42 Credit for the elderly or the disabled. Attach Schedule R . . | 42 |

43 Child tax credit (see page 33) . . . . . . . . . . | 43 |

44 Education credits. Attach Form 8863 . . . . . . . | 44 |

45 Adoption credit. Attach Form 8839 . . . . . . . . | 45 |

46 Foreign tax credit. Attach Form 1116 if required . . . | 46 |

47 Other. Check if from a ☐ Form 3800  b ☐ Form 8396
c ☐ Form 8801  d ☐ Form (specify) _____ | 47 |

48 Add lines 41 through 47. These are your **total credits** . . . . . . . . | 48 |

49 Subtract line 48 from line 40. If line 48 is more than line 40, enter -0- . . . . ▸ | 49 |

**Other Taxes**

50 Self-employment tax. Attach Schedule SE . . . . . . . . . . . . | 50 |

51 Alternative minimum tax. Attach Form 6251 . . . . . . . . . . . | 51 |

52 Social security and Medicare tax on tip income not reported to employer. Attach Form 4137 | 52 |

53 Tax on IRAs, other retirement plans, and MSAs. Attach Form 5329 if required . . | 53 |

54 Advance earned income credit payments from Form(s) W-2 . . . . . . . | 54 |

55 Household employment taxes. Attach Schedule H . . . . . . . . . | 55 |

56 Add lines 49 through 55. This is your **total tax** . . . . . . . . . ▸ | 56 |

**Payments**

57 Federal income tax withheld from Forms W-2 and 1099 . . | 57 |

58 1999 estimated tax payments and amount applied from 1998 return . | 58 |

59a Earned income credit. Attach Sch. EIC if you have a qualifying child

b Nontaxable earned income: amount . . . ▸
and type ▸ _____ | 59a |

60 Additional child tax credit. Attach Form 8812 . . . . | 60 |

61 Amount paid with request for extension to file (see page 48) . | 61 |

62 Excess social security and RRTA tax withheld (see page 48) | 62 |

63 Other payments. Check if from a ☐ Form 2439 b ☐ Form 4136 | 63 |

64 Add lines 57, 58, 59a, and 60 through 63. These are your **total payments** . . . ▸ | 64 |

**Refund**

Have it directly deposited!
See page 48 and fill in 66b, 66c, and 66d.

65 If line 64 is more than line 56, subtract line 56 from line 64. This is the amount you **OVERPAID** | 65 |

66a Amount of line 65 you want **REFUNDED TO YOU.** . . . . . . . . ▸ | 66a |

▸ b Routing number | | | ▸ c Type: ☐ Checking ☐ Savings

▸ d Account number | | |

67 Amount of line 65 you want **APPLIED TO YOUR 2000 ESTIMATED TAX** ▸ | 67 |

**Amount You Owe**

68 If line 56 is more than line 64, subtract line 64 from line 56. This is the **AMOUNT YOU OWE.**
For details on how to pay, see page 49 . . . . . . . . . . . ▸ | 68 |

69 Estimated tax penalty. Also include on line 68 . . . . | 69 |

**Sign Here**

Joint return? See page 18.

Keep a copy for your records.

Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

| Your signature | Date | Your occupation | Daytime telephone number (optional) |
|---|---|---|---|
| Spouse's signature. If a joint return, BOTH must sign. | Date | Spouse's occupation | |

**Paid Preparer's Use Only**

| Preparer's signature | Date | Check if self-employed ☐ | Preparer's SSN or PTIN |
|---|---|---|---|
| Firm's name (or yours if self-employed) and address | | EIN | |
| | | ZIP code | |

Form **1040** (1999)

## Disclosure, Privacy Act, and Paperwork Reduction Act Notice

The IRS Restructuring and Reform Act of 1998, the Privacy Act of 1974, and Paperwork Reduction Act of 1980 require that when we ask you for information we must first tell you our legal right to ask for the information, why we are asking for it, and how it will be used. We must also tell you what could happen if we do not receive it and whether your response is voluntary, required to obtain a benefit, or mandatory under the law.

This notice applies to all papers you file with us, including this tax return. It also applies to any questions we need to ask you so we can complete, correct, or process your return; figure your tax; and collect tax, interest, or penalties.

Our legal right to ask for information is Internal Revenue Code sections 6001, 6011, and 6012(a) and their regulations. They say that you must file a return or statement with us for any tax you are liable for. Your response is mandatory under these sections. Code section 6109 requires that you provide your social security number or individual taxpayer identification number on what you file. This is so we know who you are, and can process your return and other papers. You must fill in all parts of the tax form that apply to you. But you do not have to check the boxes for the Presidential Election Campaign Fund or provide your daytime telephone number.

You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue law.

We ask for tax return information to carry out the tax laws of the United States. We need it to figure and collect the right amount of tax.

If you do not file a return, do not provide the information we ask for, or provide fraudulent information, you may be charged penalties and be subject to criminal prosecution. We may also have to disallow the exemptions, exclusions, credits, deductions, or adjustments shown on the tax return. This could make the tax higher or delay any refund. Interest may also be charged.

Generally, tax returns and return information are confidential, as stated in Code section 6103. However, Code section 6103 allows or requires the Internal Revenue Service to disclose or give the information shown on your tax return to others as described in the Code. For example, we may disclose your tax information to the Department of Justice, to enforce the tax laws, both civil and criminal, and to cities, states, the District of Columbia, U.S. commonwealths or possessions, and certain foreign governments to carry out their tax laws. We may disclose your tax information to the Department of Treasury and contractors for tax administration purposes; and to other persons as necessary to obtain information which we cannot get in any other way in order to determine the amount of or to collect the tax you owe. We may disclose your tax information to the Comptroller General of the United States to permit the Comptroller General to review the Internal Revenue Service. We may also disclose your tax information to Committees of Congress; Federal, state, and local child support agencies; and to other Federal agencies for the purposes of determining entitlement for benefits or the eligibility for and the repayment of loans.

Please keep this notice with your records. It may help you if we ask you for other information. If you have questions about the rules for filing and giving information, please call or visit any Internal Revenue Service office.

### The Time It Takes To Prepare Your Return

We try to create forms and instructions that can be easily understood. Often this is difficult to do because our tax laws are very complex. For some people with income mostly from wages, filling in the forms is easy. For others who have businesses, pensions, stocks, rental income, or other investments, it is more difficult.

### We Welcome Comments on Forms

If you have comments concerning the accuracy of the time estimates shown below or suggestions for making these forms simpler, we would be happy to hear from you. You can e-mail us your suggestions and comments through the IRS Internet Home Page (www.irs.gov/help/email.html) or write to the Tax Forms Committee, Western Area Distribution Center, Rancho Cordova, CA 95743-0001. DO NOT send your return to this address. Instead, see the back cover.

### Estimated Preparation Time

The time needed to complete and file Form 1040, its schedules, and accompanying worksheets will vary depending on individual circumstances. The estimated average times are:

| Form | Recordkeeping | Learning about the law or the form | Preparing the form | Copying, assembling, and sending the form to the IRS | Totals |
|------|---------------|-----------------------------------|--------------------|------------------------------------------------------|--------|
| Form 1040 | 3 hr., 15 min. | 2 hr., 39 min. | 6 hr., 22 min. | 35 min. | 12 hr., 51 min. |
| Sch. A | 3 hr., 5 min. | 40 min. | 1 hr., 34 min. | 20 min. | 5 hr., 39 min. |
| Sch. B | 33 min. | 8 min. | 24 min. | 20 min. | 1 hr., 25 min. |
| Sch. C | 6 hr., 26 min. | 1 hr., 11 min. | 2 hr., 7 min. | 35 min. | 10 hr., 19 min. |
| Sch. C-EZ | 46 min. | 4 min. | 34 min. | 20 min. | 1 hr., 44 min. |
| Sch. D | 1 hr., 4 min. | 2 hr., 16 min. | 1 hr., 39 min. | 35 min. | 5 hr., 34 min. |
| Sch. D-1 | 13 min. | 1 min. | 11 min. | 35 min. | 1 hr. |
| Sch. E | 2 hr., 52 min. | 1 hr., 7 min. | 1 hr., 16 min. | 35 min. | 5 hr., 50 min. |
| Sch. EIC | - - - - - | 2 min. | 14 min. | 20 min. | 36 min. |
| Sch. F: | | | | | |
| Cash Method | 4 hr., 2 min. | 36 min. | 1 hr., 14 min. | 20 min. | 6 hr., 12 min. |
| Accrual Method | 4 hr., 22 min. | 25 min. | 1 hr., 19 min. | 20 min. | 6 hr., 26 min. |
| Sch. H | 46 min. | 30 min. | 52 min. | 35 min. | 2 hr., 43 min. |
| Sch. J | 20 min. | 7 min. | 50 min. | 20 min. | 1 hr., 37 min. |
| Sch. R | 20 min. | 15 min. | 29 min. | 35 min. | 1 hr., 39 min. |
| Sch. SE: | | | | | |
| Short | 20 min. | 14 min. | 13 min. | 14 min. | 1 hr., 1 min. |
| Long | 13 min. | 20 min. | 34 min. | 20 min. | 1 hr., 27 min. |

Form **1040**

Department of the Treasury—Internal Revenue Service
**U.S. Individual Income Tax Return** **2000** (99) IRS Use Only—Do not write or staple in this space.

For the year Jan. 1–Dec. 31, 2000, or other tax year beginning , 2000, ending , 20 | OMB No. 1545-0074

**Label**
(See instructions on page 19.)

Use the IRS label. Otherwise, please print or type.

L A B E L   H E R E

Your first name and initial | Last name | Your social security number

If a joint return, spouse's first name and initial | Last name | Spouse's social security number

Home address (number and street). If you have a P.O. box, see page 19. | Apt. no.

City, town or post office, state, and ZIP code. If you have a foreign address, see page 19.

▲ **Important!** ▲
You must enter your SSN(s) above.

**Presidential Election Campaign**
(See page 19.)

Note. Checking "Yes" will not change your tax or reduce your refund.
Do you, or your spouse if filing a joint return, want $3 to go to this fund? . . . ► | You ☐Yes ☐No | Spouse ☐Yes ☐No

**Filing Status**

Check only one box.

1 ☐ Single
2 ☐ Married filing joint return (even if only one had income)
3 ☐ Married filing separate return. Enter spouse's social security no. above and full name here. ► _____
4 ☐ Head of household (with qualifying person). (See page 19.) If the qualifying person is a child but not your dependent, enter this child's name here. ► _____
5 ☐ Qualifying widow(er) with dependent child (year spouse died ► ). (See page 19.)

**Exemptions**

6a ☐ Yourself. If your parent (or someone else) can claim you as a dependent on his or her tax return, do not check box 6a . . . . . . . . . . . . . . . . . .
b ☐ Spouse . . . . . . . . . . . . . . . . . . . . . . . . .

If more than six dependents, see page 20.

c Dependents:
(1) First name   Last name | (2) Dependant's social security number | (3) Dependent's relationship to you | (4)✓ if qualifying child for child tax credit (see page 20)

d Total number of exemptions claimed . . . . . . . . . . . . . . .

No. of boxes checked on 6a and 6b _____
No. of your children on 6c who:
• lived with you
• did not live with you due to divorce or separation (see page 20)
Dependents on 6c not entered above _____
Add numbers entered on lines above ► _____

**Income**

Attach Forms W-2 and W-2G here. Also attach Form(s) 1099-R if tax was withheld.

If you did not get a W-2, see page 21.

Enclose, but do not attach, any payment. Also, please use Form 1040-V.

7 Wages, salaries, tips, etc. Attach Form(s) W-2 . . . . . . . . . . | 7
8a Taxable interest. Attach Schedule B if required . . . . . . . . . . | 8a
b Tax-exempt interest. Do not include on line 8a . . . | 8b |
9 Ordinary dividends. Attach Schedule B if required . . . . . . . . . | 9
10 Taxable refunds, credits, or offsets of state and local income taxes (see page 22) . | 10
11 Alimony received . . . . . . . . . . . . . . . . . . . . | 11
12 Business income or (loss). Attach Schedule C or C-EZ . . . . . . . . | 12
13 Capital gain or (loss). Attach Schedule D if required. If not required, check here ► ☐ | 13
14 Other gains or (losses). Attach Form 4797 . . . . . . . . . . . . | 14
15a Total IRA distributions . | 15a | b Taxable amount (see page 23) | 15b
16a Total pensions and annuities | 16a | b Taxable amount (see page 23) | 16b
17 Rental real estate, royalties, partnerships, S corporations, trusts, etc. Attach Schedule E | 17
18 Farm income or (loss). Attach Schedule F . . . . . . . . . . . . | 18
19 Unemployment compensation . . . . . . . . . . . . . . . . | 19
20a Social security benefits . | 20a | b Taxable amount (see page 25) | 20b
21 Other income. List type and amount (see page 25) .................. | 21
22 Add the amounts in the far right column for lines 7 through 21. This is your total income ► | 22

**Adjusted Gross Income**

23 IRA deduction (see page 27) . . . . . . . . . . | 23 |
24 Student loan interest deduction (see page 27) . . . . | 24 |
25 Medical savings account deduction. Attach Form 8853 . | 25 |
26 Moving expenses. Attach Form 3903 . . . . . | 26 |
27 One-half of self-employment tax. Attach Schedule SE . | 27 |
28 Self-employed health insurance deduction (see page 29) | 28 |
29 Self-employed SEP, SIMPLE, and qualified plans . . | 29 |
30 Penalty on early withdrawal of savings . . . . . . | 30 |
31a Alimony paid b Recipient's SSN ► | 31a |
32 Add lines 23 through 31a . . . . . . . . . . . . . . . . . ► | 32
33 Subtract line 32 from line 22. This is your adjusted gross income . . . . . ► | 33

For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see page 58. | Cat. No. 11320B | Form **1040** (2000)

Form 1040 (2000)                                                                                                                        Page **2**

| | | | | |
|---|---|---|---|---|
| **Tax and Credits** | 34 | Amount from line 33 (adjusted gross income) . . . . . . . . . . . . | 34 | |
| | 35a | Check if: ☐ **You were** 65 or older, ☐ Blind; ☐ **Spouse was** 65 or older, ☐ Blind. Add the number of boxes checked above and enter the total here . . . . ▶ 35a | | |
| **Standard Deduction for Most People** | b | If you are married filing separately and your spouse itemizes deductions, or you were a dual-status alien, see page 31 and check here . . . . . . . ▶ 35b ☐ | | |
| | 36 | Enter your itemized deductions from Schedule A, line 28, or standard deduction shown on the left. But see page 31 to find your standard deduction if you checked any box on line 35a or 35b or if someone can claim you as a dependent . . . . . . . . | 36 | |
| **Single:** $4,400 | 37 | Subtract line 36 from line 34 . . . . . . . . . . . . . . . . . . | 37 | |
| **Head of household:** $6,450 | 38 | If line 34 is $96,700 or less, multiply $2,800 by the total number of exemptions claimed on line 6d. If line 34 is over $96,700, see the worksheet on page 32 for the amount to enter . | 38 | |
| **Married filing jointly or Qualifying widow(er):** $7,350 | 39 | **Taxable income.** Subtract line 38 from line 37. If line 38 is more than line 37, enter -0- | 39 | |
| | 40 | Tax (see page 32). Check if any tax is from  a ☐ Form(s) 8814   b ☐ Form 4972 | 40 | |
| **Married filing separately:** $3,675 | 41 | Alternative minimum tax. Attach Form 6251 . . . . . . . . . . . . . | 41 | |
| | 42 | Add lines 40 and 41 . . . . . . . . . . . . . . . . . . . ▶ | 42 | |

| | | | | |
|---|---|---|---|---|
| | 43 | Foreign tax credit. Attach Form 1116 if required . . . . | 43 | |
| | 44 | Credit for child and dependent care expenses. Attach Form 2441 | 44 | |
| | 45 | Credit for the elderly or the disabled. Attach Schedule R . | 45 | |
| | 46 | Education credits. Attach Form 8863 . . . . . . . | 46 | |
| | 47 | Child tax credit (see page 36) . . . . . . . . . | 47 | |
| | 48 | Adoption credit. Attach Form 8839 . . . . . . . . | 48 | |
| | 49 | Other. Check if from  a ☐ Form 3800   b ☐ Form 8396   c ☐ Form 8801   d ☐ Form (specify) _____ | 49 | |
| | 50 | Add lines 43 through 49. These are your total credits . . . . . . . . . ▶ | 50 | |
| | 51 | Subtract line 50 from line 42. If line 50 is more than line 42, enter -0- . . . . . ▶ | 51 | |

| | | | | |
|---|---|---|---|---|
| **Other Taxes** | 52 | Self-employment tax. Attach Schedule SE . . . . . . . . . . . . . . | 52 | |
| | 53 | Social security and Medicare tax on tip income not reported to employer. Attach Form 4137 | 53 | |
| | 54 | Tax on IRAs, other retirement plans, and MSAs. Attach Form 5329 if required . . . | 54 | |
| | 55 | Advance earned income credit payments from Form(s) W-2 . . . . . . . . . | 55 | |
| | 56 | Household employment taxes. Attach Schedule H . . . . . . . . . . . | 56 | |
| | 57 | Add lines 51 through 56. This is your **total tax** . . . . . . . . . . . ▶ | 57 | |

| | | | | |
|---|---|---|---|---|
| **Payments** | 58 | Federal income tax withheld from Forms W-2 and 1099 . . | 58 | |
| | 59 | 2000 estimated tax payments and amount applied from 1999 return | 59 | |
| **If you have a qualifying child, attach Schedule EIC.** | 60a | Earned income credit (EIC) . . . . . . . . . | 60a | |
| | b | Nontaxable earned income: amount . . . ▶ and type ▶ ................................. | | |
| | 61 | Excess social security and RRTA tax withheld (see page 50) | 61 | |
| | 62 | Additional child tax credit. Attach Form 8812 . . . . | 62 | |
| | 63 | Amount paid with request for extension to file (see page 50) | 63 | |
| | 64 | Other payments. Check if from  a ☐ Form 2439  b ☐ Form 4136 | 64 | |
| | 65 | Add lines 58, 59, 60a, and 61 through 64. These are your **total payments** . . . ▶ | 65 | |

| | | | | |
|---|---|---|---|---|
| **Refund** | 66 | If line 65 is more than line 57, subtract line 57 from line 65. This is the amount you **overpaid** | 66 | |
| | 67a | Amount of line 66 you want **refunded to you** . . . . . . . . . . . . ▶ | 67a | |
| **Have it directly deposited! See page 50 and fill in 67b, 67c, and 67d.** | ▶ b | Routing number ☐☐☐☐☐☐☐☐☐   ▶ c Type: ☐ Checking  ☐ Savings | | |
| | ▶ d | Account number ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐ | | |
| | 68 | Amount of line 66 you want applied to your 2001 estimated tax ▶ | 68 | | |

| | | | | |
|---|---|---|---|---|
| **Amount You Owe** | 69 | If line 57 is more than line 65, subtract line 65 from line 57. This is the amount you **owe**. For details on how to pay, see page 51 . . . . . . . . . . . . . ▶ | 69 | |
| | 70 | Estimated tax penalty. Also include on line 69 . . . . | 70 | | |

| | |
|---|---|
| **Sign Here** **Joint return?** See page 19. Keep a copy for your records. | Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge. |

| Your signature | Date | Your occupation | Daytime phone number ( ) |
|---|---|---|---|
| Spouse's signature. If a joint return, both must sign. | Date | Spouse's occupation | May the IRS discuss this return with the preparer shown below (see page 52)?  ☐ Yes  ☐ No |

| **Paid Preparer's Use Only** | Preparer's signature ▶ | | Date | Check if self-employed ☐ | Preparer's SSN or PTIN |
|---|---|---|---|---|---|
| | Firm's name (or yours if self-employed), address, and ZIP code ▶ | | | EIN | |
| | | | | Phone no. ( ) | |

Form **1040** (2000)

## Disclosure, Privacy Act, and Paperwork Reduction Act Notice

The IRS Restructuring and Reform Act of 1998, the Privacy Act of 1974, and Paperwork Reduction Act of 1980 require that when we ask you for information we must first tell you our legal right to ask for the information, why we are asking for it, and how it will be used. We must also tell you what could happen if we do not receive it and whether your response is voluntary, required to obtain a benefit, or mandatory under the law.

This notice applies to all papers you file with us, including this tax return. It also applies to any questions we need to ask you so we can complete, correct, or process your return; figure your tax; and collect tax, interest, or penalties.

Our legal right to ask for information is Internal Revenue Code sections 6001, 6011, and 6012(a) and their regulations. They say that you must file a return or statement with us for any tax you are liable for. Your response is mandatory under these sections. Code section 6109 requires that you provide your social security number or individual taxpayer identification number on what you file. This is so we know who you are, and can process your return and other papers. You must fill in all parts of the tax form that apply to you. But you do not have to check the boxes for the Presidential Election Campaign Fund or for authorizing the IRS to discuss your return with the paid preparer shown. You also do not have to provide your daytime telephone number.

You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue law.

We ask for tax return information to carry out the tax laws of the United States. We need it to figure and collect the right amount of tax.

If you do not file a return, do not provide the information we ask for, or provide fraudulent information, you may be charged penalties and be subject to criminal prosecution. We may also have to disallow the exemptions, exclusions, credits, deductions, or adjustments shown on the tax return. This could make the tax higher or delay any refund. Interest may also be charged.

Generally, tax returns and return information are confidential, as stated in Code section 6103. However, Code section 6103 allows or requires the Internal Revenue Service to disclose or give the information shown on your tax return to others as described in the Code. For example, we may disclose your tax information to the Department of Justice, to enforce the tax laws, both civil and criminal, and to cities, states, the District of Columbia, U.S. commonwealths or possessions, and certain foreign governments to carry out their tax laws. We may disclose your tax information to the Department of Treasury and contractors for tax administration purposes; and to other persons as necessary to obtain information which we cannot get in any other way in order to determine the amount of or to collect the tax you owe. We may disclose your tax information to the Comptroller General of the United States to permit the Comptroller General to review the Internal Revenue Service. We may also disclose your tax information to Committees of Congress; Federal, state, and local child support agencies; and to other Federal agencies for the purposes of determining entitlement for benefits or the eligibility for and the repayment of loans.

Please keep this notice with your records. It may help you if we ask you for other information. If you have questions about the rules for filing and giving information, please call or visit any Internal Revenue Service office.

### The Time It Takes To Prepare Your Return

We try to create forms and instructions that can be easily understood. Often this is difficult to do because our tax laws are very complex. For some people with income mostly from wages, filling in the forms is easy. For others who have businesses, pensions, stocks, rental income, or other investments, it is more difficult.

### We Welcome Comments on Forms

If you have comments concerning the accuracy of the time estimates shown below or suggestions for making these forms simpler, we would be happy to hear from you. You can e-mail us your suggestions and comments through the IRS Internet Home Page (www.irs.gov/help/email.html) or write to the Tax Forms Committee, Western Area Distribution Center, Rancho Cordova, CA 95743-0001. Do not send your return to this address. Instead, see the back cover.

## Estimated Preparation Time

The time needed to complete and file Form 1040, its schedules, and accompanying worksheets will vary depending on individual circumstances. The estimated average times are:

| Form | Recordkeeping | Learning about the law or the form | Preparing the form | Copying, assembling, and sending the form to the IRS | Totals |
|---|---|---|---|---|---|
| Form 1040 | 2 hr., 45 min. | 3 hr., 25 min. | 6 hr., 16 min. | 35 min. | 13 hr., 1 min. |
| Sch. A | 3 hr., 4 min. | 39 min. | 1 hr., 34 min. | 20 min. | 5 hr., 37 min. |
| Sch. B | 33 min. | 8 min. | 25 min. | 20 min. | 1 hr., 26 min. |
| Sch. C | 6 hr., 2 min. | 1 hr., 21 min. | 2 hr., 19 min. | 41 min. | 10 hr., 23 min. |
| Sch. C-EZ | 45 min. | 3 min. | 35 min. | 20 min. | 1 hr., 43 min. |
| Sch. D | 1 hr., 30 min. | 3 hr., 4 min. | 1 hr., 50 min. | 34 min. | 6 hr., 58 min. |
| Sch. D-1 | 13 min. | 1 min. | 11 min. | 34 min. | 59 min. |
| Sch. E | 3 hr., 3 min. | 1 hr., 1 min. | 1 hr., 25 min. | 34 min. | 6 hr., 3 min. |
| Sch. EIC | - - - - - | 1 min. | 13 min. | 20 min. | 34 min. |
| Sch. F: | | | | | |
| Cash Method | 3 hr., 29 min. | 36 min. | 1 hr., 27 min. | 20 min. | 5 hr., 52 min. |
| Accrual Method | 3 hr., 36 min. | 26 min. | 1 hr., 25 min. | 20 min. | 5 hr., 47 min. |
| Sch. H | 1 hr., 38 min. | 30 min. | 53 min. | 34 min. | 3 hr., 35 min. |
| Sch. J | 19 min. | 10 min. | 1 hr., 11 min. | 20 min. | 2 hr. |
| Sch. R | 19 min. | 15 min. | 30 min. | 34 min. | 1 hr., 38 min. |
| Sch. SE: | | | | | |
| Short | 13 min. | 14 min. | 12 min. | 13 min. | 52 min. |
| Long | 26 min. | 20 min. | 33 min. | 20 min. | 1 hr., 39 min. |

Form **1040**

Department of the Treasury—Internal Revenue Service

**U.S. Individual Income Tax Return** **2001** (99) IRS Use Only—Do not write or staple in this space.

For the year Jan. 1–Dec. 31, 2001, or other tax year beginning , 2001, ending , 20

OMB No. 1545-0074

**Label**

(See Instructions on page 19.)

Use the IRS label. Otherwise, please print or type.

Your first name and initial | Last name | Your social security number

If a joint return, spouse's first name and initial | Last name | Spouse's social security number

Home address (number and street). If you have a P.O. box, see page 19. | Apt. no.

City, town or post office, state, and ZIP code. If you have a foreign address, see page 19.

▲ **Important!** ▲

You must enter your SSN(s) above.

**Presidential Election Campaign**

(See page 19.)

Note. Checking "Yes" will not change your tax or reduce your refund.

Do you, or your spouse if filing a joint return, want $3 to go to this fund? ▶

You ☐ Yes ☐ No    Spouse ☐ Yes ☐ No

**Filing Status**

Check only one box.

1 ☐ Single
2 ☐ Married filing joint return (even if only one had income)
3 ☐ Married filing separate return. Enter spouse's social security no. above and full name here. ▶
4 ☐ Head of household (with qualifying person). (See page 19.) If the qualifying person is a child but not your dependent, enter this child's name here. ▶
5 ☐ Qualifying widow(er) with dependent child (year spouse died ▶ ). (See page 19.)

**Exemptions**

6a ☐ Yourself. If your parent (or someone else) can claim you as a dependent on his or her tax return, do not check box 6a
b ☐ Spouse
c Dependents:

| (1) First name    Last name | (2) Dependent's social security number | (3) Dependent's relationship to you | (4) ✔ if qualifying child for child tax credit (see page 20) |
|---|---|---|---|
| | | | ☐ |
| | | | ☐ |
| | | | ☐ |
| | | | ☐ |
| | | | ☐ |
| | | | ☐ |

If more than six dependents, see page 20.

d Total number of exemptions claimed

No. of boxes checked on 6a and 6b
No. of your children on 6c who:
• lived with you
• did not live with you due to divorce or separation (see page 20)
Dependents on 6c not entered above
Add numbers entered on lines above ▶

**Income**

Attach Forms W-2 and W-2G here. Also attach Form(s) 1099-R if tax was withheld.

If you did not get a W-2, see page 21.

Enclose, but do not attach, any payment. Also, please use Form 1040-V.

7 Wages, salaries, tips, etc. Attach Form(s) W-2 | 7
8a Taxable interest. Attach Schedule B if required | 8a
b Tax-exempt interest. Do not include on line 8a | 8b
9 Ordinary dividends. Attach Schedule B if required | 9
10 Taxable refunds, credits, or offsets of state and local income taxes (see page 22) | 10
11 Alimony received | 11
12 Business income or (loss). Attach Schedule C or C-EZ | 12
13 Capital gain or (loss). Attach Schedule D if required. If not required, check here ▶ ☐ | 13
14 Other gains or (losses). Attach Form 4797 | 14
15a Total IRA distributions . 15a | b Taxable amount (see page 23) | 15b
16a Total pensions and annuities 16a | b Taxable amount (see page 23) | 16b
17 Rental real estate, royalties, partnerships, S corporations, trusts, etc. Attach Schedule E | 17
18 Farm income or (loss). Attach Schedule F | 18
19 Unemployment compensation | 19
20a Social security benefits . 20a | b Taxable amount (see page 25) | 20b
21 Other income. List type and amount (see page 27) | 21
22 Add the amounts in the far right column for lines 7 through 21. This is your total income ▶ | 22

**Adjusted Gross Income**

23 IRA deduction (see page 27) | 23
24 Student loan interest deduction (see page 28) | 24
25 Archer MSA deduction. Attach Form 8853 | 25
26 Moving expenses. Attach Form 3903 | 26
27 One-half of self-employment tax. Attach Schedule SE | 27
28 Self-employed health insurance deduction (see page 30) | 28
29 Self-employed SEP, SIMPLE, and qualified plans | 29
30 Penalty on early withdrawal of savings | 30
31a Alimony paid b Recipient's SSN ▶ | 31a
32 Add lines 23 through 31a | 32
33 Subtract line 32 from line 22. This is your adjusted gross income ▶ | 33

For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see page 72.    Cat. No. 11320B    Form **1040** (2001)

Form 1040 (2001)

Page **2**

| | | | | |
|---|---|---|---|---|
| **Tax and Credits** | 34 | Amount from line 33 (adjusted gross income) . . . . . . . . . . | 34 | |
| | 35a | Check if: ☐ **You** were 65 or older, ☐ Blind; ☐ **Spouse** was 65 or older, ☐ Blind. Add the number of boxes checked above and enter the total here . . . ► 35a ☐ | | |
| Standard Deduction for— | b | If you are married filing separately and your spouse itemizes deductions, or you were a dual-status alien, see page 31 and check here . . . . . ► 35b ☐ | | |
| • People who checked any box on line 35a or 35b or who can be claimed as a dependent, see page 31. | 36 | Itemized deductions (from Schedule A) **or your** standard deduction (see left margin) . | 36 | |
| | 37 | Subtract line 36 from line 34 . . . . . . . . . . . . | 37 | |
| | 38 | If line 34 is $99,725 or less, multiply $2,900 by the total number of exemptions claimed on line 6d. If line 34 is over $99,725, see the worksheet on page 32 . . . | 38 | |
| | 39 | Taxable income. Subtract line 38 from line 37. If line 38 is more than line 37, enter -0- | 39 | |
| • All others: Single, $4,550 | 40 | Tax (see page 33). Check if any tax is from a ☐ Form(s) 8814   b ☐ Form 4972 | 40 | |
| Head of household, $6,650 | 41 | **Alternative minimum tax** (see page 34). Attach Form 6251 . . . . | 41 | |
| Married filing jointly or Qualifying widow(er), $7,600 | 42 | Add lines 40 and 41 . . . . . . . . . . . . ► | 42 | |
| | 43 | Foreign tax credit. Attach Form 1116 if required . . . | 43 | | |
| | 44 | Credit for child and dependent care expenses. Attach Form 2441 | 44 | | |
| Married filing separately, $3,800 | 45 | Credit for the elderly or the disabled. Attach Schedule R . | 45 | | |
| | 46 | Education credits. Attach Form 8863 . . . . . | 46 | | |
| | 47 | Rate reduction credit. See the worksheet on page 36 . . | 47 | | |
| | 48 | Child tax credit (see page 37) . . . . . . | 48 | | |
| | 49 | Adoption credit. Attach Form 8839 . . . . . | 49 | | |
| | 50 | Other credits from:   a ☐ Form 3800    b ☐ Form 8396 c ☐ Form 8801   d ☐ Form (specify) | 50 | | |
| | 51 | Add lines 43 through 50. These are your **total credits** . . . . . . | 51 | |
| | 52 | Subtract line 51 from line 42. If line 51 is more than line 42, enter -0- . . . . ► | 52 | |
| **Other Taxes** | 53 | Self-employment tax. Attach Schedule SE . . . . . . . . . | 53 | |
| | 54 | Social security and Medicare tax on tip income not reported to employer. Attach Form 4137 | 54 | |
| | 55 | Tax on qualified plans, including IRAs, and other tax-favored accounts. Attach Form 5329 if required | 55 | |
| | 56 | Advance earned income credit payments from Form(s) W-2 . . . . . . | 56 | |
| | 57 | Household employment taxes. Attach Schedule H . . . . . . . | 57 | |
| | 58 | Add lines 52 through 57. This is your **total tax** . . . . . . . ► | 58 | |
| **Payments** | 59 | Federal income tax withheld from Forms W-2 and 1099 . | 59 | | |
| | 60 | 2001 estimated tax payments and amount applied from 2000 return | 60 | | |
| If you have a qualifying child, attach Schedule EIC. | 61a | Earned income credit (EIC) . . . . . . | 61a | | |
| | b | Nontaxable earned income . . . | 61b | | | |
| | 62 | Excess social security and RRTA tax withheld (see page 51) . | 62 | | |
| | 63 | Additional child tax credit. Attach Form 8812 . . . | 63 | | |
| | 64 | Amount paid with request for extension to file (see page 51) | 64 | | |
| | 65 | Other payments. Check if from   a ☐ Form 2439   b ☐ Form 4136 | 65 | | |
| | 66 | Add lines 59, 60, 61a, and 62 through 65. These are your **total payments** . . . . ► | 66 | |
| **Refund** | 67 | If line 66 is more than line 58, subtract line 58 from line 66. This is the amount you **overpaid** | 67 | |
| Direct deposit? See page 51 and fill in 68b, 68c, and 68d. | 68a | Amount of line 67 you want refunded to you . . . . . . . . . ► | 68a | |
| | ► b | Routing number               ► c Type: ☐ Checking ☐ Savings | | |
| | ► d | Account number | | |
| | 69 | Amount of line 67 you want applied to your 2002 estimated tax ► | 69 | | |
| **Amount You Owe** | 70 | **Amount you owe.** Subtract line 66 from line 58. For details on how to pay, see page 52 ► | 70 | |
| | 71 | Estimated tax penalty. Also include on line 70 . . . . | 71 | | |
| **Third Party Designee** | | Do you want to allow another person to discuss this return with the IRS (see page 53)? ☐ **Yes. Complete the following.** ☐ No | | |
| | | Designee's name ►      Phone no. ► ( )     Personal identification number (PIN) ► | | |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Joint return? See page 19. Keep a copy for your records.

| | Date | | Daytime phone number |
|---|---|---|---|
| Your signature | | Your occupation | ( ) |
| Spouse's signature. If a joint return, **both** must sign. | Date | Spouse's occupation | |

**Paid Preparer's Use Only**

| Preparer's signature ► | Date | Check if self-employed ☐ | Preparer's SSN or PTIN |
|---|---|---|---|
| Firm's name (or yours if self-employed), address, and ZIP code ► | | EIN | |
| | | Phone no. ( ) | |

Form **1040** (2001)

## Disclosure, Privacy Act, and Paperwork Reduction Act Notice

The IRS Restructuring and Reform Act of 1998, the Privacy Act of 1974, and Paperwork Reduction Act of 1980 require that when we ask you for information we must first tell you our legal right to ask for the information, why we are asking for it, and how it will be used. We must also tell you what could happen if we do not receive it and whether your response is voluntary, required to obtain a benefit, or mandatory under the law.

This notice applies to all papers you file with us, including this tax return. It also applies to any questions we need to ask you so we can complete, correct, or process your return; figure your tax; and collect tax, interest, or penalties.

Our legal right to ask for information is Internal Revenue Code sections 6001, 6011, and 6012(a) and their regulations. They say that you must file a return or statement with us for any tax you are liable for. Your response is mandatory under these sections. Code section 6109 requires that you provide your social security number or individual taxpayer identification number on what you file. This is so we know who you are, and can process your return and other papers. You must fill in all parts of the tax form that apply to you. But you do not have to check the boxes for the Presidential Election Campaign Fund or for the third-party designee. You also do not have to provide your daytime phone number.

You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue law.

We ask for tax return information to carry out the tax laws of the United States. We need it to figure and collect the right amount of tax.

If you do not file a return, do not provide the information we ask for, or provide fraudulent information, you may be charged penalties and be subject to criminal prosecution. We may also have to disallow the exemptions, exclusions, credits, deductions, or adjustments shown on the tax return. This could make the tax higher or delay any refund. Interest may also be charged.

Generally, tax returns and return information are confidential, as stated in Code section 6103. However, Code section 6103 allows or requires the Internal Revenue Service to disclose or give the information shown on your tax return to others as described in the Code. For example, we may disclose your tax information to the Department of Justice, to enforce the tax laws, both civil and criminal, and to cities, states, the District of Columbia, U.S. commonwealths or possessions, and certain foreign governments to carry out their tax laws. We may disclose your tax information to the Department of Treasury and contractors for tax administration purposes; and to other persons as necessary to obtain information which we cannot get in any other way in order to determine the amount of or to collect the tax you owe. We may disclose your tax information to the Comptroller General of the United States to permit the Comptroller General to review the Internal Revenue Service. We may also disclose your tax information to Committees of Congress; Federal, state, and local child support agencies; and to

other Federal agencies for the purposes of determining entitlement for benefits or the eligibility for and the repayment of loans.

Please keep this notice with your records. It may help you if we ask you for other information. If you have questions about the rules for filing and giving information, please call or visit any Internal Revenue Service office.

### The Time It Takes To Prepare Your Return

We try to create forms and instructions that can be easily understood. Often this is difficult to do because our tax laws are very complex. For some people with income mostly from wages, filling in the forms is easy. For others who have businesses, pensions, stocks, rental income, or other investments, it is more difficult.

### We Welcome Comments on Forms

If you have comments concerning the accuracy of the time estimates shown below or suggestions for making these forms simpler, we would be happy to hear from you. You can e-mail us your suggestions and comments through the IRS Internet Home Page (www.irs.gov/help/email2.html) or write to the Tax Forms Committee, Western Area Distribution Center, Rancho Cordova, CA 95743-0001. Do not send your return to this address. Instead, see the back cover.

### Estimated Preparation Time

The time needed to complete and file Form 1040, its schedules, and accompanying worksheets will vary depending on individual circumstances. The estimated average times are:

| Form | Recordkeeping | Learning about the law or the form | Preparing the form | Copying, assembling, and sending the form to the IRS | Totals |
|---|---|---|---|---|---|
| Form 1040 | 2 hr., 46 min. | 3 hr., 30 min. | 6 hr., 37 min. | 34 min. | 13 hr., 27 min. |
| Sch. A | 3 hr., 4 min. | 39 min. | 1 hr., 34 min. | 20 min. | 5 hr., 37 min. |
| Sch. B | 33 min. | 8 min. | 25 min. | 20 min. | 1 hr., 26 min. |
| Sch. C | 6 hr., 4 min. | 1 hr., 31 min. | 2 hr., 19 min. | 41 min. | 10 hr., 35 min. |
| Sch. C-EZ | 45 min. | 3 min. | 35 min. | 20 min. | 1 hr., 43 min. |
| Sch. D | 1 hr., 29 min. | 2 hr., 59 min. | 2 hr., 34 min. | 34 min. | 7 hr., 36 min. |
| Sch. D-1 | 13 min. | 1 min. | 11 min. | 34 min. | 59 min. |
| Sch. E | 3 hr. | 1 hr. | 1 hr., 24 min. | 34 min. | 5 hr., 58 min. |
| Sch. EIC | - - - - - | 1 min. | 13 min. | 20 min. | 34 min. |
| Sch. F: | | | | | |
| Cash Method | 3 hr., 29 min. | 36 min. | 1 hr., 27 min. | 20 min. | 5 hr., 52 min. |
| Accrual Method | 3 hr., 36 min. | 26 min. | 1 hr., 25 min. | 20 min. | 5 hr., 47 min. |
| Sch. H | 1 hr., 38 min. | 30 min. | 53 min. | 34 min. | 3 hr., 35 min. |
| Sch. J | 19 min. | 11 min. | 1 hr., 32 min. | 20 min. | 2 hr., 22 min. |
| Sch. R | 19 min. | 15 min. | 30 min. | 34 min. | 1 hr., 38 min. |
| Sch. SE: | | | | | |
| Short | 13 min. | 14 min. | 13 min. | 13 min. | 53 min. |
| Long | 26 min. | 20 min. | 35 min. | 20 min. | 1 hr., 41 min. |

# UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| LINDSEY K. SPRINGER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 06-CV-0110-CVE-PJC |
| | ) | |
| UNITED STATES, THE INTERNAL | ) | |
| REVENUE SERVICE, and THE | ) | |
| COMMISSIONER OF INTERNAL REVENUE | ) | |
| SERVICE, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Now before the Court for consideration is defendants' motion to dismiss (Dkt. # 15) for lack

of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and for failure to state a claim

pursuant to Fed. R. Civ. P. 12(b)(6). Also before the Court are plaintiff's motion for preliminary

injunction (Dkt. # 6), plaintiff's motion for sanctions (Dkt. # 19), and plaintiff's motion for a

temporary restraining order (Dkt. # 22). Plaintiff accuses defendants of willfully violating the

Paperwork Reduction Act ("PRA"). Plaintiff asks the Court to order defendants to bring the United

States Individual Income Tax Return, Form 1040, into compliance with the PRA.[1] Further, plaintiff

alleges that defendants are not authorized to enforce tax laws due to their alleged failure to comply

with the PRA, and he seeks to enjoin defendants from penalizing him or other individuals for willful

failure to file income tax returns between 1982 and 2006.

Defendants argue that plaintiff's complaint should be dismissed on several grounds: the Anti-

Injunction Act ("AIA") of the Internal Revenue Code, 26 U.S.C. § 7421, prohibits individual

---

[1] Plaintiff argues that Form 1040 and its variations (1040A, 1040EZ, and 1040ES) do not have valid Office of Management and Budget (OMB) numbers, in violation of the PRA.

taxpayers from bringing an action in federal court to enjoin the assessment or collection of any federal tax; plaintiff has failed to establish that an exception to the AIA applies; and sovereign immunity bars plaintiff's claims. In the alternative, defendants argue that plaintiff has failed to state a claim because his interpretation of the PRA is without merit. Because the Rule 12(b)(1) argument is dispositive, there is no need to address defendants' Rule 12(b)(6) argument.

## I.

In September 1996, the Internal Revenue Service ("IRS") issued two notices of deficiency to plaintiff asserting federal income tax deficiencies from 1990 to 1995. Springer v. United States, 2005 WL 2467775 (W.D. Okla. Oct. 6, 2005). Plaintiff filed a petition with the United States Tax Court ("Tax Court"), which found that plaintiff was liable for the documented deficiencies. In March 2005, the IRS sent plaintiff notice of its intent to levy and gave plaintiff information on his rights under the Internal Revenue Code. Plaintiff rightfully requested a collection due process hearing ("CDP hearing"). He then filed suit against the government in the United States District Court for the Western District of Oklahoma, disputing the amount of his income tax liability, the method by which the government assessed the amount owed, and the manner in which the IRS conducted its investigation. Id. The Western District of Oklahoma granted defendants' motion to dismiss for lack of subject matter jurisdiction and held that proper jurisdiction was in the Tax Court. Id.; see 26 U.S.C. § 6330(d). After the CDP hearing, plaintiff filed a second complaint in the Western District of Oklahoma asking for injunctive relief from the government. This action constitutes plaintiff's third attempt to enjoin the federal government from penalizing him for failing to file federal income tax returns.

2

## II.

Federal courts are courts of limited jurisdiction and, as the parties seeking to invoke federal jurisdiction, plaintiffs bear the burden of proving such jurisdiction is proper. <u>Basso v. Utah Power & Light Co.</u>, 495 F.2d 906, 909 (10th Cir. 1974). A court lacking jurisdiction "cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." <u>Id.</u> Motions to dismiss under Rule 12(b)(1) "generally take one of two forms. The moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." <u>Merrill Lynch Business Financial Services, Inc. v. Nudell</u>, 363 F.3d 1072, 1074 (10th Cir. 2004) (quoting <u>Maestas v. Lujan</u>, 351 F.3d 1001, 1013 (10th Cir. 2003) (internal citation and quotations omitted)). In analyzing a motion to dismiss on the basis of a facial attack on the sufficiency of the complaint, a court must presume all of the allegations contained in the complaint to be true. <u>Ruiz v. McDonnell</u>, 299 F.3d 1173, 1180 (10th Cir. 2002).

## III.

Defendants assert the complaint is facially insufficient in that it fails to plead a claim over which federal courts have been granted jurisdiction. "As a general rule, a complaint is sufficient [under Fed. R. Civ. P. 8(a)(2)] if it sets forth 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" <u>United States v. Missouri-Kansas-Texas R. Co.</u>, 273 F.2d 474, 476 (10th Cir. 1959) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41 (1957)). Plaintiff's complaint fails to set forth a jurisdictional basis for his claims.

3

The AIA states that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." 26 U.S.C. § 7421(a). There are statutory and judicial exceptions to the general bar against taxpayer lawsuits under the AIA. The United States has not consented to suits brought by taxpayers except under the express conditions set out in 26 U.S.C. §§ 7421 and 7422. The Supreme Court carved out a narrow exception to the AIA, whereby litigation is permitted if two criteria are met: under no circumstances would the government be certain of succeeding on the merits; and plaintiff would suffer irreparable harm with no adequate legal remedy absent injunction. Enochs v. Williams Packing & Navigation Co., 370 U.S. 1, 7 (1962) ("Only if it is then apparent that, under the most liberal view of the law and the facts, the United States cannot establish its claim, may the suit for an injunction be maintained."). Plaintiff fails to argue that his claims fall within an exception to the AIA but, rather, maintains that this action is outside the scope of the AIA. However, if successful, plaintiff's suit would restrain the collection of federal taxes by limiting defendants' ability to collect taxes due between 1982 to 2006. Thus, the AIA bars his claims unless they fall within an exception to the AIA.

Plaintiff's complaint does not qualify for the judicial exception to the AIA because defendants are likely to succeed on the merits. Plaintiff's allegations rely on the language of the public protection provision of the PRA, which states that "no person shall be subject to any penalty for failing to comply with a collection of information . . . if the collection of information does not display a valid control number." 44 U.S.C. § 3512(a)(1). However, it is settled law that "the requirement to file a tax return is mandated by statute, not by regulation" and "such explicit statutory requirements are not subject to the PRA." United States v. Dawes, 951 F.2d 1189, 1191-92 (10th

Cir. 1991).[2] The PRA was not designed to "repeal the statutory criminal penalty for failing to file

an income tax return because tax regulations and instructions lack OMB numbers." Id. at 1193.

Further, the Secretary of Treasury and the IRS have clear authority to impose criminal and civil

penalties related to Form 1040. 26 U.S.C. §§ 7801, 7803; see Londsdale v. United States, 919 F.2d

1440, 1444 (10th Cir. 1990) (dismissing plaintiff's claim that IRS lacked authority to enforce tax

code after finding that the PRA "did not apply to the collection of information . . . during the

conduct of . . . an administrative action or investigation involving an agency against specific

individuals or entities" pursuant to 44 U.S.C. § 3518(c)(1)(B)(ii)). It is clear that defendants have

meritorious defenses to plaintiff's allegations. Thus, plaintiff's claims do not fall within the judicial

exception to the AIA. Plaintiff fails to argue that his claims are excepted under any of the statutory

provisions. Accordingly, plaintiff's claims are barred by the AIA and he has failed to show that they

fall within any exception to the AIA.

Further, plaintiff lacks authority to enforce the PRA. The PRA does not create a private right

of action but, rather, serves as a defense. 44 U.S.C. § 3512(b); see Fostvedt v. U.S., 978 F.2d 1201,

1202 (10th Cir. 1992). Plaintiff's complaint is dismissed for lack of subject matter jurisdiction, as

it is not within the power of this Court to adjudicate his claims.

---

[2]     See also James v. United States, 970 F.2d 750 (10th Cir. 1992) (holding that the lack of an
OMB number on IRS notices and forms does not violate the PRA); United States v. Collins,
920 F.2d 619 (10th Cir. 1990) (defendant's argument that Forms 1040 lacked expiration
dates and, therefore, failed to comply with PRA is legally frivolous).

5

IV.

**IT IS THEREFORE ORDERED** that defendants' motion to dismiss (Dkt. # 15) is **granted**, and plaintiff's complaint is **dismissed** for lack of subject matter jurisdiction.

**IT IS FURTHER ORDERED** that plaintiff's motion for preliminary injunction (Dkt. # 6), plaintiff's motion for sanctions (Dkt. # 19), and plaintiff's motion for temporary restraining order (Dkt. # 22) are **moot**.

**DATED** this 21st day of June, 2006.

6